IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| WILLIAM ROBINSON, #406-227, | * |
| Plaintiff, | * |
| v. | * Civil Case No.: PWG-13-880 |
| CORRECTIONAL MEDICAL SERVICES, INC., *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

William Robinson (hereinafter Robinson) is suing under 42 U.S.C. § 1983. *See* Compl., ECF No. 1. Defendants Corizon, Inc., f/b/a Correctional Medical Services, Inc. (hereinafter Corizon), Wexford Health Sources, Inc. (hereinafter Wexford) and the Department of Public Safety and Correctional Services (hereinafter DPSCS) have filed motions to dismiss or, in the alternative for summary judgment, ECF Nos. 6 (corrected in ECF No. 30), 19, and 24, to which Robinson has responded, ECF No. 26.[1] On November 25, 2013, Defendant Corizon was instructed to file a corrected motion to ECF No. 6, which was unsigned. Corizon filed the signed motion on December 2, 2013, ECF No. 30, and the attachments to the original motion are considered with corrected motion. Therefore, the original motion, ECF No. 6, shall be DENIED AS MOOT in light of the corrected motion. No hearing is needed to resolve the issues presented in this case. *See* Local Rule 106.5 (D. Md. 2011). For the reasons below, the motion to dismiss

---

[1] Robinson was informed of his right to file a reply consonant with the ruling set forth in *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), and has not filed any declarations or verified exhibits. ECF No. 26.

filed by the DPSCS, ECF No. 24, shall be granted, and Corizon and Wexford's motions, ECF Nos. 19 and 30, treated as motions for summary judgment, will be granted.[2]

## BACKGROUND

Robinson, who is self-represented and a former inmate in the custody of the Maryland Division of Correction (hereinafter DOC), claims that he was provided inadequate medical treatment for a leg injury of unstated origin.[3] Additionally, Robinson blames falls that he sustained in DOC facilities on June 8, 2012, October 16, 2012, and December 10, 2012, on Defendants' failure to provide him a timely orthopedic consultation, delays in providing medical care and pain care management, and failure to provide a handicap accessible prison cell. As redress, Robinson seeks injunctive relief whereby he will receive surgery or therapy as well as $35,000 in damages for each year he is unable to work and punitive damages of $10,000,000. Compl. 7.[4]

DPSCS moves for dismissal of the claims against it under the Eleventh Amendment to the United States Constitution, and asserts Robinson's demands for injunctive relief are directed to the Medical Defendants. Defendants Corizon and Wexford request dismissal of Robinson's claims for failure to state a claim upon which relief can be granted or, or alternatively, because they are entitled to judgment in their favor as a matter of law.

---

[2] Robinson has also filed a Motion for Appointment of Counsel, ECF No. 27. There is no constitutional right to appointment of counsel in civil cases. "[A] plaintiff must present 'exceptional circumstances' for appointment of counsel," see *Harris v. Salley*, 339 F. App'x 281, 284 (4th Cir. 2009) (quoting *Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987), and none is presented here. Accordingly, the Motion will be denied.

[3] Robinson's pain symptoms appear to have started after he fell from a truck on April 21, 2012. *See* Med. Recs. 1, 3, 7, 12, Wexford's Mot Ex. 1, ECF No. 19-5. Robinson, who was not incarcerated or detained at the time of his fall, was examined at the University of Maryland Medical Center. Robinson's x-rays from that time showed a moderate joint effusion, but no fracture or dislocation. *See id.* at 1.

[4] Robinson is no longer incarcerated. *See* Notice, ECF No. 28.

## I. Robinson's Allegations

This Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *See Scott v. Harris,* 550 U.S. 372, 378 (2007); *see also Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (stating the pleadings of a pro se litigant are liberally construed).

On May 29, 2012, Robinson was transported to Bon Secours Hospital where he was examined and provided crutches and a leg brace, and then escorted to the Central Booking and Intake Facility (hereinafter CBIF). At CBIF, Robinson was evaluated by pre-trial detention medical staff who recommended an orthopedic consultation for him. Compl. 4. The orthopedic consultation was approved during the first week of June of 2012, but according to Robinson "nothing happened for several months'" despite his submission of sick call slips and verbal entreaties concerning his pain and discomfort. *Id.*

Robinson was placed on a medical tier at CBIF because of his leg injury and use of crutches. *Id.* at 5 On June 8, 2012, Robinson fell in the shower and injured his head, neck and shoulder which he attributes to the lack of rails, a bench, or other accommodations for handicap accessibility. *Id.* Robinson was examined in the medical unit and transported to the infirmary at the Maryland Training Center where he was assessed and prescribed a neck brace. He remained in the infirmary approximately one week, and returned to CBIF without having received the prescribed neck brace or further treatment. *Id.*

At a later unspecified date, Robinson was transferred from pretrial detention to Jessup Correctional Institution (hereinafter JCI). There, he learned that the institutional medical provider had switched from Corizon, Inc. to Wexford, and Wexford was not honoring medical

consultation requests previously approved by Corizon. *Id.*[5] Sometime in October of 2012, Wexford approved an orthopedic consultation for Robinson. *Id.*

Robinson complains that it took six months for him to be seen by an orthopedist and as of December 30, 2012, he was unaware that his medical problems had been diagnosed or that there "had there been any corrective actions taken to restore flexibility and strength in my left leg." *Id.*

On October 16, 2012, Robinson fell at JCI when his crutch broke, and injured his right elbow and right knee. *See id.* at 7. He was treated with ice for a swollen elbow and given another crutch. Robinson states that two days later he was given an x-ray, but went without medication, a wheel chair, or other assistive devices to facilitate his movement or ease his discomfort. Robinson was instructed to continue using the crutches, and one week later advised the pain was due to "bone chips floating around" in his elbow. *Id.* at 8.

On December 10, 2012, Robinson fell in his cell. Robinson asserts that despite his medical order for a cell equipped with a handrail, there was none. Robinson was seen by a medical provider and given ice for his leg and five days of pain medication. *See id.*

## II. Wexford's Exhibits

Wexford has filed an affidavit and verified exhibits, including copies of Robinson's health records. *See* Med. Recs. Robinson's health records are in Wexford's possession, and Corizon, the former contractual medical provider, has adopted and incorporated Wexford's arguments in this case. Corizon's Mem. 3, ECF No. 6-1.

---

[5] On July 1, 2012, Wexford became the contractual medical provider for inmates housed in Maryland DOC facilities. *See infra*, at 4. Prior to July 1, 2012, Wexford served solely as the utilization review management provider for DPSCS. *See id.*

### A. Affidavit of Andrew Moultrie, M.D.

Andrew Moultrie, M.D. (hereinafter Moultrie), a physician employed by Wexford who has treated Robinson, attests that Robinson has a history of pain in his left knee, back and neck. Moultrie Aff. ¶ 5, ECF No 19-2. Moultrie notes that on July 1, 2012, Wexford became the medical provider for inmates in the DPSCS, having served prior to that time as the utilization review management provider for DPSCS. *Id.* ¶ 2.

Moultrie attests that Robinson's x-rays and MRI study revealed:

> moderate effusion in the left knee and the MRI revealed a small radial tear of the lateral meniscus; and indicated low grade strains at the medial head of the gastrosnemius [sic] and possibly the distal adductor Magnus tendon. In conjunction with a positive McMurray signs[6] and a reduced range of motion, this indicated a moderate degradation of his left knee function for which low level pain medicine prescriptions would be appropriate. Mid-level providers had also ordered a knee brace for his left knee and crutches and a wheelchair for ambulation.

*Id.* ¶ 7; *see also* Med. Recs. 12–13.

On September 25, 2012, Moultrie examined Robinson's left knee, finding it stable with a limited range of motion, and advised him to continue his prescribed medication pending "examination and recommendation of specialty care." *Id.* ¶ 8; Med. Recs. 12–13. On November of 2012, Robinson was examined by Dr. Manning, an orthopedic surgeon, who determined the left knee was stable, recommended replacing the knee brace with a neoprene sleeve, and recommended the MRI referenced above. *Id.*

In December of 2012, Robinson was prescribed a five-day course of Codeine #3 and Nalbuphine for back pain. Moultrie states:

---

[6] This refers to a test for injury to meniscal structures in the knee. Pain and cracking in the knee when the lower leg is rotated while the leg is extended indicates injury. Wexford's Mem. 6 n.3, ECF No. 19-1 (citing www.medical-dictionary.thefree dictionary.com).

> A short term prescription for narcotic pain medication was appropriate given Robinson's history of heroin and cocaine abuse. Despite Plaintiff's complaints that his Tylenol, Naprosyn, Baclofen, and Indomethacin prescriptions were ineffective for pain, Plaintiff's clinical findings and his history of drug abuse indicated that it was appropriate to continue their use. In addition, Plaintiff was found to be non-compliant with his medication program as he reported taking more than the prescribed dosage of Motrin.
>
> Plaintiff's left knee and back are being appropriately treated with exercise, physical therapy, non-narcotic pain medications, and use of a knee brace. Plaintiff's evaluating orthopedic surgeon has not recommended surgery for Plaintiff's left knee. Furthermore, in Affiant's medical opinion to a reasonable degree of medical probability, Plaintiff's clinical assessment and his diagnostic studies, do not warrant surgery to treat these conditions.

*Id.* ¶¶ 11–12.

Dr. Manning saw Robinson in January of 2013 for a follow-up appointment at which time Robinson was diagnosed with left knee strain and a small tear in the meniscus, his prescription for Naprosyn was renewed, and a course of exercise and physical therapy was recommended. *Id.* ¶ 9; *see also* Med. Recs. 22. Robinson was provided twelve sessions of physical therapy, beginning on January 18, 2013. *Id.* ¶ 10. Robinson's x-rays revealed "[m]ild degenerative changes with small anterior osteophytes" for which he was prescribed Baclofen, a muscle relaxant, and Indomethacin, an anti-inflammatory. *Id.* ¶ 11.

### B. Medical Records

Robinson's medical records show that on July 6, 2012, he submitted a sick call request complaining of left knee, hip, and groin pain, and asked for medication. Med. Recs. 3.

On July 17, 2012, Robinson submitted a sick call request for left knee pain and asked for pain medication. *Id.* at 4. He wrote "this is my 4th sick call for the same problem. I am on crutches. I have brace on the left leg." *Id.*

On July 28, 2012, Robinson seen by Dr. Yahya for a twisted ankle. *See id.* at 4–5. Robinson was given Naprosyn for his pain. *Id.* at 5. The medical chart indicates that Robinson had "a consult for ortho on 6/13/12." *Id.*

On August 3, 2012, Nathan McKoy, a registered nurse practitioner, saw Robinson for complaints of left knee pain. Examination revealed positive McMurray symptoms and moderately reduced passive range of motion of the left knee. *Id.* at 7–8. Robinson was prescribed Tylenol and Robaxin as needed. The medical chart reads "will follow up with pt [patient] next week for possible follow up with orthopedic [sic] after reviewing medical records." *Id.* at 8.

On August 20, 2012, Robinson was seen by Mesfin Frew, a physician's assistant, who found positive McMurray signs in Robinson's left knee with mildly reduced range of motion. Robinson was scheduled for a repeat x-ray of his left knee and transferred to a medical cell pending the x-ray. *Id.* at 9. That same day, Robinson was issued a medical order for a bottom bunk and a cell with rails for three months. *Id.* at 11.

On August 25, 2012, Moultrie evaluated Robinson for knee pain, continued his medication regimen, and scheduled him for a follow-up appointment. *See supra*, at 5.

On October 3, 2012, Mike Romain, a physician's assistant, evaluated Robinson for back pain. Med. Recs. 14–15. Physical examination revealed tenderness and a limited range of motion. *Id.* at 15. Robinson's lumbosacral back was x-rayed and "indicated mild degenerative changes with small anterior osteophytes seen at L2-L3, L3-L4, L4-L5, and L5-S1 level." *Id.* at 15. Robinson was prescribed Baclofen and Indomethacin.[7]

---

[7] Baclofen is a muscle relaxant and anti- spasmodic. Indocin (Indomethacin) is a nonsteroidal anti-inflammatory drug. Wexford's Mem. 7 nn.6–7.

On October 12, 2012, John Moss ("Moss"), a physician's assistant, completed a consultation request form for Robinson. *Id.* at 16.

On October 16, 2012, Robinson went to the medical unit for right elbow pain, reporting that he fell because his crutch broke when a screw fell off. *Id.* at 18. Examination revealed the skin on the right elbow was intact and not swollen, but was tender and painful with a limited range of motion. *Id.* at 18. X-rays taken of the right elbow showed a "small linear calcification/ossification seen along the tricept insertion area along dorsal surface oat the elbow joint." *Id.* The joint space was described as "unremarkable." *Id.*

On October 23, 2012, medical providers issued two-week wheelchair assignment for Robinson. *Id.* at 21.

As earlier noted, on November 6, 2012, Robinson was evaluated by Dr. Manning who recommended an elastic knee sleeve, instead of crutches, and an MRI study. *Id.* at 22, *see supra*, at 5.

On November 19, 2012, Robinson was seen for elbow and knee pain. Robinson requested pain medication stronger than the Motrin 800 mg. that had been prescribed for him. Robinson's condition was recorded as stable, Tylenol 500 mg. was added to his medication regimen, and he was instructed to return to the medical unit if he did not improve. Med. Recs. 25–26.

On December 10, 2012, Robinson was seen for back pain and knee pain secondary to a fall. *Id.* at 27. He was prescribed Tylenol with Codeine # 8,[8] Nalbuphine Hcl,[9] and warm compresses

---

[8] Tylenol with Codeine # 3 is used to relieve mild to moderate pain. Codeine, a narcotic analgesic, may become habit-forming when taken for a long period of time. Wexford's Mem. 9 n.8 (citing www.drugs.com).

[9] Nalbuphine, also known by its brand name Nubain, is an analgesic. *See* http://vsearch.nlm.nih.gov/vivisimo/cgi-bin/query-meta?v%3Aproject=medlineplus&query=nubain.

for five days. *Id.* The same day, Robinson was issued a medical order for feed-in status and a cell with rails for ninety days. *Id.* at 29. The medical record from that date indicates Robinson was sitting in a wheelchair in a "calm and in comfortable state" in the waiting area, and upon entering the examining room became "tearful [sic] and in a lot of discomfort." *Id.* at 27.

On December 31, 2012, Robinson requested additional medication for his left knee pain. Robinson, who had finished the Motrin previously provided to him, admitted to taking more than the prescribed dosage. *Id.* at 30. It was noted that Robinson was awaiting an orthopedic follow-up appointment scheduled for January 15, 2013, and his prescriptions for Baclofen, acetaminophen (Tylenol) were renewed until January 15, 2015. *Id.*

On January 8, 2013, Robinson was riding in a DOC van when it was involved in an accident. *Id.* at 32–33. Robinson was examined the same day for injury. The medical records from that day, shows Robinson's cervical spine had upper trapezius tenderness and full range of motion. *Id.* at 32. His left knee showed MCL (mediate cruciate ligament) tenderness, no swelling, and was mildly painful with motion. *Id.* at 23. Robinson was prescribed Tylenol #3 with Codeine until January 15, 2013, and instructed to follow up if his condition worsened or failed to improve within four days. *Id.*

On January 15, 2013, Robinson saw Manning for his follow-up orthopedic visit. Manning renewed Robinson's Naprosyn prescription, and recommended physical therapy and exercise. *See id.* at 34; *see supra,* at 5–6. As earlier indicated, Robinson received twelve sessions of physical therapy. *See supra,* at 6; *see also* Med. Recs. 45–47.

On January 28, 2013, Robinson complained of moderate and stabbing back pain and requested pain medication. The record notes Robinson was already on Indocin, Baclofen, and Naprosyn and a brace had been ordered for him. Med. Recs. 39. Robinson was instructed to

9

continue his current medication and return if his condition worsened or failed to improve in fifteen days. *Id.*

On February 8, 2013, Robinson returned to the medical unit, presenting complaints of back pain. He indicated his current medications were not working and requested Tylenol #3 or Percocet. *Id.* at 43. No changes were made to his medication regimen. *Id.* On March 7, 2013, Robinson's physical therapy sessions were extended. *Id.* at 45–47.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This Rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Rule 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

Plaintiff proceeds *pro se*, and therefore his complaint receives liberal construction. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, liberal construction does not absolve Plaintiff of the requirements of factual support in the Rules relevant to his filing. *See Holsey v. Collins*, 90 F.R.D. 122, 128 (D. Md. 1981) (citing *Inmates v. Owens*, 561 F.2d 560, 562–63 (4th Cir. 1977)). As stated by the Fourth Circuit,

> It is neither unfair nor unreasonable to require a pleader to put his complaint in an intelligible, coherent, and manageable form, and his failure to do so may warrant dismissal. *Corcoran v. Yorty*, 347 F.2d 222, 223 (9th Cir.), *cert. denied*, 382 U.S. 966 (1965); *Holsey v. Collins*, 90 F.R.D. 122, 128 (D. Md. 1981). District courts are not required to be mind readers, or to conjure questions not squarely presented to them. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986).

*Harris v. Angliker*, 955 F.2d 41, 1992 WL 21375, at *1 (4th Cir. Feb. 10, 1992).

"Matters outside of the pleadings are generally not considered in ruling on a Rule 12 motion." *Williams v. Branker*, 462 F. App'x 348, 352 (4th Cir. 2012). However, "when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'" *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) (emendations in *Am. Chiropractic*)). Documents referenced and relied upon by a plaintiff can be considered without converting a motion to dismiss into a motion for summary judgment. *See Sec'y of State for Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *HQM, Ltd. v. Hatfield*, 71 F. Supp. 2d 500, 502 (D. Md. 1999).

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or

11

other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Celotex v. Catrett*, 477 U.S. 317, 322–23 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986) (citations omitted). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.* at 252.

This court is mindful that Robinson is a self-represented litigant, and must liberally construe his pleadings. *See Erickson* 551 U.S. at 94; *Cruz v. Beto*, 405 U.S. 319 (1972). Nonetheless, liberal construction does not mean a court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *See Weller v. Department of Social Services*, 901 F.2d 387, 391 (4th Cir. 1990). A court cannot assume the existence of a genuine issue of material fact where none exists. Fed.R.Civ.P. 56(c).

## DISCUSSION

### I. Motion to Dismiss by Department of Public Safety and Correctional Services

The DPSCS seeks dismissal of Robinson's claims against it based on immunity conferred under the Eleventh Amendment to the Constitution of the United States, and asserts that as an

agency of the State of Maryland it is immune from suit.[10] Plaintiff did not respond to this argument. *See* Pl.'s Opp'n, ECF No. 26.

The Eleventh Amendment precludes suit in federal court against a state by its own citizens, unless the state consents otherwise. *See Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). Although the State of Maryland has waived its sovereign immunity for certain types of cases brought in State courts, *see, e.g.*, Md. Code Ann., State Gov't, § 12-202(a) (West 2009) (allowing suits in contract if brought within one year), it has not waived its immunity under the Eleventh Amendment to suit in federal court with respect to claims under § 1983.[11] For these reasons, the Motion to Dismiss filed by DPSCS shall be granted.

## II. Motions for Summary Judgment by the Medical Providers

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion).[12] To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that Defendants' actions (or their failure to act) amounted to

---

[10] The DPSCS does not directly address the merits of Robinson's claim concerning the lack of accommodations in his cell.

[11] Further, the states and their agents are not "persons" subject to suit under § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (noting the distinct scopes of the Eleventh Amendment and § 1983).

[12] Insofar as Robinson may have been a pretrial detainee during some or all of the period at issue, the constitutional protections afforded to a pre-trial detainee under the Fourteenth Amendment are coextensive with those provided by the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "Due process rights of a pretrial detainee are at least as great as the Eighth Amendment protections available to the convicted prisoner." *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992) (citing *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir.1988)); *see also Riley v. Dorton*, 115 F.3d 1159, 1167 (4th Cir. 1997), *abrogated in part by Wilkins v. Gaddy*, 559 U.S. 34, 38–40 (2010) (pre-trial detainee's Fourteenth Amendment right with respect to excessive force is similar to prisoner's Eighth Amendment right, both require more than de minimus injury).

13

deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, plaintiff was suffering from a serious medical need and that, subjectively, staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The health provider's conduct and treatment must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Jackson v. Sampson*, ---- F. App'x ----, 2013 WL 3892952, at *1 (4th Cir. July 30, 2013); *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (citation omitted).

As noted, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (noting there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry. The second component of proof requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Further, "any negligence or malpractice on the part of . . . doctors in missing [a]

diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson v. Quinones*, 145 F.3d 164, 166 (4th Cir. 1998).

Absent evidence that a doctor ignored symptoms linked to a serious medical condition of which the doctor was aware, the subjective knowledge required for Eighth Amendment liability is not present. *See id.* at 169 (actions inconsistent with an effort to hide a serious medical condition refute presence of doctor's subjective knowledge). Disagreements between medical staff and an inmate as to the necessity for, or the manner or extent of, medical treatment do not rise to a constitutional injury. *See Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment."); *see also Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975).

### A. Corizon

The Court takes notice that Corizon was the contractual prison health care provider for a number of Maryland correctional facilities prior to July 1, 2012. During that time, Corizon administered medical care only through its agents and employees. *See, e.g., Williams v Corizon Med. Serv.*, No. DKC-12-2121, 2013 WL 45416884, at *4 (D. Md. Aug. 26, 2013). Thus, Corizon is named a defendant solely under a theory of vicarious liability, otherwise known as the doctrine of respondeat superior. The law is well-established that respondeat superior is inapplicable to § 1983 claims involving entities such as Corizon. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Love–Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004)

15

*Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982). Respondeat superior only applies in circumstances where, for instance, a municipality possesses final authority to establish policy with respect to the action ordered. *See Lone-Lane*, 355 F.3d at 782.

Corizon employees provided medical treatment to Robinson during the time period under consideration for slightly more than one month. *See* Corizon's Mem. 1–2. During that time, Robinson was examined, provided with crutches and a brace, and approved for an orthopedic evaluation. Compl. 4. Thus, viewing the facts in the light most favorable to Robinson, his allegations fail even to suggest deliberate indifference to his serious medical needs on the part of individual Corizon employees. Further, Corizon did not have final authority for any decisions, which all were the responsibility of the DOC. Robinson fails to meet his burden to show a genuine dispute as to any material fact and Corizon is entitled to judgment as a matter of law.

### B. Wexford

Similarly, Wexford is a corporate entity that can act only through its employees and agents, and cannot be held liable under 42 U.S.C. § 1983 solely on the basis of respondeat superior, for the reasons explained above. To the extent that Robinson complains about the actions of individual Wexford employees, the facts show that Robinson was evaluated, diagnosed, and treated by various medical providers, including an orthopedist, administered diagnostic studies, and prescribed medication as well as a course of physical therapy and exercise. It is true that Robinson's orthopedic consultation was delayed as a result of the change in medical providers, and he does not appear to have received the sleeve recommended by Dr. Manning. Robinson, however, provides no evidence that Wexford or his medical providers acted with requisite deliberate indifference to deny or deprive him of medical treatment. Robinson was seen on numerous occasions for his medical concerns, treated with various modalities, and

provided follow-up for his complaints. As explained above, claims of negligence or malpractice and disagreement with medical practitioners over the course of treatment do not rise to the level of constitutional injury. For these reasons, summary judgment will be entered in favor of Wexford.

## CONCLUSION

For the reasons explained above, the Motion to Dismiss filed by DPSCS will be granted, and summary judgment will be entered in favor of Corizon and Wexford. A separate order shall issue.

Dated: 6/20/13

Paul W. Grimm
United States District Judge